IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VERONICA R. JONES, ET AL., | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:08-cv-1128 |
| | : | |
| v. | : | Judge Watson |
| | : | |
| PETLAND, INC., ET AL., | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |

**PETLAND, INC.'S MOTION TO DISMISS**

## I.      INTRODUCTION AND STANDARD OF REVIEW

Recent cases from the United States Supreme Court have redefined pleading standards and the analysis required in connection with a motion to dismiss.  *See Ashcroft v. Iqbal*, 566 U.S. -- (May 18, 2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Shortly before the filing of the Amended Complaint in this case, in *Ashcroft v. Iqbal*, the United States Supreme Court explained that under the pleading standards relevant to a motion to dismiss, plausibility and factual sufficiency are required. Conclusory allegations -- even legal conclusions couched as factual conclusions -- are insufficient.  The Court explains that the motion to dismiss analysis begins with the identification of legal and factual conclusions where specificity is lacking, followed by a plausibility analysis with respect to the claims and conclusions asserted.  The Court in *Ashcroft* explained:

> As the Court held in *Twombly,* 550 U. S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  *Id*., at 555 (citing *Papasan* v. *Allain,* 478 U. S. 265, 286 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action will not do." 550 U. S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*  *  *  *

Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F. 3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations.

Plaintiffs' sweeping allegations consist of implausible, conclusory assertions.  For example, the plaintiffs claim that Petland "fraudulently induce[s franchisees] to purchase failing Petland franchises" that Petland knows cannot succeed.  (Am. Comp. at ¶14.)  Plaintiffs further claim that this scheme is fueled by a desire to "'sign-up and shut-down'" stores "while reaping excessive, punitive and penalizing profits through the extortion of unlawful liquidated damages."  (*Id.*)  Conspicuously absent from plaintiffs' Amended Complaint are facts identifying even a single franchisee who has ever paid liquidated damages to Petland.  Certainly if this is the claim that the plaintiffs are asserting before this Court, they have some facts they can provide illustrating the "excessive, punitive and penalizing profits" that Petland is "reaping."

The other conclusory allegations of bad conduct set forth in the Amended Complaint include claims that Petland forces its franchisees to purchase animals from vendors who sell sick dogs and purchase products from suppliers who sell overpriced merchandise with respect to which the "franchisees cannot possibly make money." (Am. Comp. at ¶15 and ¶26.)  Plaintiffs further allege that all franchisees are forced to use a Point of Sale system and software that does not work.  (*Id.* at ¶25.)  Plaintiffs' alleged conclusions cry out for factual specificity.  The Amended Complaint itself acknowledges that "Petland has been in business since 1967," and that it has a system of stores across the United States."  (*Id.* at ¶16.)  Plaintiffs' story that Petland has been in operation for more than forty years -- and in fact is the franchisor or operator of more than 200 Petland specialty pet stores in the United States and five other countries -- while selling franchises that are:  (a) designed and intended to fail, (b) required to purchase sick dogs

and overpriced merchandise, and (c) required to run their businesses with a computer system that doesn't work, is, in the words of *Twombly* and *Ashcroft*, implausible. Because plaintiffs' claims are based upon an overriding theme that is counter-intuitive and implausible, it is particularly important to hold plaintiffs to the legal requirement of providing factual specificity for their claims.

In addition to the pleading standards outlined by the Supreme Court in *Ashcroft*, Fed.R.Civ.P. 9(b), and the case law applying it, impose additional requirements of particularity with respect to claims of fraud. *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 563 (6th Cir. 2003); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873 (6th Cir. 2006), *cert. denied*, 549 U.S. 889 (2006).  Moreover, the particularity of pleading required by Fed.R.Civ.P. 9(b) also applies to RICO claims.  *See, e.g., Wright v. Dunn*, 2009 U.S. App. LEXIS 4239 (6th Cir., March 3, 2009); *Bender v. Southland Corp.,* 749 F.2d 1205, 1215 (6th Cir. 1984) (affirming dismissal of franchisee's RICO claims for failure to satisfy the pleading requirements of Fed.R.Civ.P. 9(b)).

As this Court has recognized, "to survive a motion to dismiss, the factual allegations of a complaint must 'state a claim for relief that is plausible on its face.'" *Bell v. Fairbanks Capital Corp.*, 2008 U.S. Dist. LEXIS 90828 (S.D. Ohio, E.D.) (Watson, J.) (citing *Bishop v. Lucent Tecs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (in turn quoting *Twombly*, 127 S.Ct. 1965, 1974).  While the Court must view the complaint in the light most favorable to the plaintiff, it is not "required to accept as true legal conclusions or unwarranted factual inferences." *Bell*, 2008 U.S. Dist. LEXIS 90828 at *3.  "Despite the instruction to construe the complaint liberally in plaintiff's favor, a complaint must contain 'either direct or inferential allegations respecting all the material elements' and

those allegations must amount to more than 'bare assertions of legal conclusions." *Walker v. Jackson Public Schools*, 42 Fed. Appx. 735, **6 (6th Cir., Aug. 5, 2002)(quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (in turn quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  Indeed, as the Supreme Court recently made clear in *Ashcroft*, the Court is to identify conclusory assertions (including legal conclusions couched as factual conclusions) and determine whether sufficient facts have been pleaded to show that the claims are plausible and that the pleader is entitled to relief.  If sufficient factual detail is lacking, dismissal is required.  As shown below, the claims asserted in Counts I (Fraud), II (Fraudulent Inducement), V (Negligent Misrepresentation), VI (RICO), and VII (Unjust Enrichment[1]) fail to meet this test and must, accordingly, be dismissed.

## II.  SUMMARY OF ARGUMENT

Plaintiffs' Amended Complaint contains several claims that are legally deficient and subject to dismissal.  First, Plaintiffs' Amended Complaint adds a civil RICO claim (Count IV) predicated on alleged wire and mail fraud.  As explained below, this new claim fails to satisfy several necessary pleading requirements for a RICO claim, including but not limited to, failing to allege an "enterprise" separate from defendant Petland itself, failure to make allegations regarding pattern, continuity and interconnectedness of the alleged racketeering activity, and failure to plead the elements of mail or wire fraud with any factual particularity.  These and other defects are fatal to the claim.

In addition, the Amended Complaint reasserts claims for fraud (Count I), fraudulent inducement (Count II), negligent misrepresentation (Count V), and unjust enrichment (Count VII).  The fraud, fraudulent inducement, and negligent

---

[1] There are two Count VIIs in the Amended Complaint, and this is the Second Count VII.

5

misrepresentation claims all fail to plead the underlying misrepresentations with particularity, and are subject to dismissal under Fed. R. Civ. P. 9(b).  Further, plaintiffs' unjust enrichment claim based upon a written contractual relationship is directly contrary to Ohio law.   For all of these reasons, the specified claims are subject to dismissal.

III.    **PLAINTIFFS FAIL TO SATISFY THE PLEADING REQUIREMENTS FOR A RICO CLAIM**

Count VI of plaintiffs' Amended Complaint is a new claim added with the filing of the Amended Complaint.  This new claim, a RICO claim pursuant to 18 U.S.C. §1962(c), consists of nothing more than a few very general and conclusory allegations. The title of Count VI labels the RICO claim as applying only "As To Defendant Petland." The allegations in paragraph 78 of the Amended Complaint confirm that the RICO claim is based upon alleged conduct of defendant Petland.  The claim is fatally flawed.

The United States Court of Appeals for the Sixth Circuit has explained "that, to establish a civil RICO claim, a plaintiff must show (1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." *All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, 162 Fed. Appx. 554 at **10 (6th Cir., Jan. 18, 2006); *Sedima, S.P.R.L. V. Imrex Co.,* 473 U.S. 479, 496 (1985) ("A violation of §1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim."); *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1488-89 (6th Cir. 1989).  With respect to the requirement of an "enterprise," the Sixth Circuit has explained:

> It is plain that the language of [18 U.S.C. § 1962(c)] precludes the "person" conducting or participating in an enterprise's affairs from simultaneously serving as the "enterprise." *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1150 n.2 (10th Cir. 1989).  Because § 1962(c) requires separate legal entities as the "person" and the

> "enterprise," courts are in substantial agreement that a corporation cannot be named as the  liable "person" and simultaneously fulfill the "enterprise" requirement as well.  [Citations omitted.]

*Puckett v. Tennessee Eastman Co.,* 889 F.2d at 1489; *see also City of Cleveland v. Woodhill Supply, Inc.*, 403 F. Supp.2d 631, 635 (N.D. Ohio 2005).  Accordingly, the Sixth Circuit in *Puckett* held that "it is clear that Puckett has alleged that Eastman is both the "person" and the "enterprise" for purposes of her § 1962(c) claim, and therefore her civil RICO count was properly dismissed. *Id.* at 1489.

Plaintiffs' Amended Complaint in this case is entirely devoid of a definition of the alleged enterprise -- itself a deficiency requiring dismissal of the claim. *See, e.g., Walker v. Jackson Public Schools,* 2 Fed. Appx. 735 at **8-**9 (6th Cir., Aug. 5, 2002) (dismissing RICO claim where "the complaint constitutes nothing more than a bare assertion that an enterprise existed").  Moreover, the allegations that are present in Count VI of plaintiffs' Amended Complaint allege only conduct of Petland.  (*See, e.g.,* Am. Comp. at ¶76 ("Defendant Petland has violated . . .), ¶78 ("defendant Petland devised and effected . . . "), ¶79 ("The execution of the scheme to defraud by Petland . . ."), ¶80 ("The predicate acts committed by Petland . . ."), ¶81 ("As a direct and proximate result of Petland's conduct set forth above . . .").)  As in *Puckett*, because the alleged RICO enterprise (if one is alleged at all) is nothing more than defendant Petland itself, such claim must be dismissed.

The predicate acts alleged as part of the scheme created and executed by defendant Petland are as follows:

> In violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343, defendant Petland devised and effected a scheme to defraud the plaintiffs and the Class and to obtain money from plaintiffs and Class members by means of fraudulent pretenses.  Specifically, Petland used fraudulent pretenses to induce plaintiffs and Class members into

> purchasing a Petland franchise by knowingly and deliberately making false representations of fact, and/or omitting material true facts.

(*See* Am. Comp. at ¶78.)   This entire allegation is nothing more than conclusory assertions, bereft of any facts.  A properly pleaded RICO claim "requires a showing of at least two related predicate acts of racketeering activity occurring within a ten year period."  *See Watral v. Silvernails Farms, LLC,* 177 F. Supp.2d 141, 148 (E.D.N.Y. 2001).  The RICO allegations in the Amended Complaint, however, fail to even address this temporal requirement.  In addition, as the district court explained in *Watral*, "[a] 'pattern' of racketeering activity requires a showing that the predicate acts relied upon are 'related, *and* that they amount to or pose a threat of continued criminal activity.'"  *Id.* at 148.   Plaintiffs' Amended Complaint fails to satisfy these necessary pleading requirements.

Moreover, as alleged in the Amended Complaint, the mail and wire fraud allegations are completely disconnected from the alleged racketeering conduct.  The allegations with respect to predicate acts simply allege that mail and wire services were used in connection with both the shipment of goods and communications related to the parties' Franchise Agreement.  *See Michalak v. Edwards*, 1997 U.S. App. LEXIS 23928 at *10 (6th Cir., Sept. 9, 1997) ("plaintiff must 'demonstrate that a causal nexus exists between his injury and the predicate acts (the criminal RICO violations), [or] he has no standing to sue . . . .'"); *City of Cleveland v. Woodhill Supply, Inc.*, 403 F. Supp.2d at 634 ("a nexus between the pattern of racketeering activity and the enterprise") (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993)).

The allegations in plaintiffs' Amended Complaint are deficient in every significant respect -- failure to allege an enterprise, failure to plead the elements of mail

and wire fraud, failure to plead fraud with particularity, failure to plead a nexus between the alleged racketeering activity and conduct involving use of the mail or wire facilities, and failure to make allegations regarding pattern, continuity and interconnectedness of the alleged racketeering activity.  For all of these reasons, defendant Petland respectfully submits that the RICO claims added as Count VI of plaintiffs' Amended Complaint must be dismissed.

**IV.**    <u>**PLAINTIFFS' AMENDED COMPLAINT FAILS TO PLEAD WITH PARTICULARITY PLAINTIFFS' FRAUD, FRAUDULENT INDUCEMENT, NEGLIGENT MISREPRESENTATION, AND CIVIL RICO CLAIMS AS REQUIRED UNDER FED. R. CIV. P 9(B).**</u>

As set forth in Fed. R. Civ. P 9(b), a party alleging fraud must state with particularity the circumstances constituting the fraud.  The United States Sixth Circuit Court of Appeals has interpreted Fed. R. Civ. P. 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which they relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 563 (6th Cir. 2003).  The Sixth Circuit has noted that, at a minimum, Fed. R. Civ. P. 9(b) requires that the plaintiff specify the "who, what, when, where, and how" of the alleged fraud.  *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873  (6th Cir. 2006), *cert. denied*, 549 U.S. 889 (2006).  In *Sanderson*, the Sixth Circuit  acknowledged the type of allegations necessary to meet the requirements of Rule 9(b):

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the [government], and (4) what the defendants obtained as a consequence of the fraud.

*Id.*, 447 F.3d at 877 (*citing United States ex rel Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003)).

While the primary purpose behind Rule 9(b)'s requirement that a claim for fraud be pled with particularity is to provide a defendant fair notice of the substance of a plaintiff's claim so that it can respond to the complaint, Rule 9(b) also discourages "fishing expeditions and strike suits" which appear more likely to consume a defendant's resources than to reveal evidence of wrongdoing. *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).  Because the defendant is informed of which of its specific actions allegedly constitute fraud, it can limit discovery and subsequent litigation to matters relevant to those allegations.  *Id.*  Additionally, Rule 9(b)'s particularity requirement protects a defendant from unwarranted damage to its reputation caused by "spurious charges of immoral and fraudulent behavior." *Id.*  By requiring the claim to be pled with particularity, the defendant is notified immediately of the focus of the plaintiff's complaint and can quickly resolve frivolous disputes by attacking the narrow basis of an allegation of fraud.  *Id.*  As explained above with respect to the RICO count, and below with respect to four of plaintiffs' other counts, such  claims fail to satisfy the elements of Fed. R. Civ. P. 9(b), and consequently must be dismissed.

1)      **Plaintiffs' Fraud And Fraudulent Inducement Claims Fail To Meet The Requirements Of Fed. R. Civ. P. 9(b)**

Plaintiffs' allegations of fraud (Count I) and fraudulent inducement (Count II) do not even attempt to satisfy the heightened pleading requirements of Rule 9(b).  The allegations in the Amended Complaint do not specify the time of the alleged misrepresentations, the place of the alleged misrepresentations, or who made the alleged misrepresentations.  Stated otherwise the Amended Complaint fails to specify the "who, .

.   .   when, [and] where" required under 9(b).   Indeed, no where in the Amended Complaint do plaintiffs set forth the content of the misrepresentations that were allegedly made.   Rather, plaintiffs allege, in conclusory fashion, the general subject matter of the claimed fraud:

> 39.     The Hyde-Jones [sic] reviewed the uniform marketing materials provided by Petland, spoke further to Petland representatives, and on or about September 22, 2005, entered into a Franchise Agreement with Petland. Once Mr. Hyde and Dr. Jones had formed Hydeaway, Hydeaway succeeded them as the franchisee pursuant to the Franchise Agreement dated January 7, 2006. Although plaintiffs did not know it at the time, Petland had misled them into entering into that Agreement by providing them false, and/or materially misleading information regarding the Murfreesboro store including but not limited to:
>
> a.     False and/or inaccurate and misleading information regarding the true start-up costs to open the Murfreesboro Petland store consistent with Petland requirements and protocols;
> b.     False and/or inaccurate and misleading information regarding the finances, profits and losses of the immediately preceding franchisee of the same store;
> c.     False and/or inaccurate and misleading information regarding the reasons why the prior franchisee had failed to succeed in the same store location;
> d.     False and/or inaccurate and misleading information regarding the viability of the animal kennels already in place in the store; and
> e.     False and/or inaccurate and misleading information regarding the functionality of the POS data system servicing the Murfreesboro store.
>
> These false, inaccurate, misleading and material misrepresentations regarding the business worth, potential, and functionality of the Murfreesboro store ultimately frustrated the very purpose of that franchise for plaintiffs and despite their best efforts to make the Murfreesboro Petland store a success, proximately, inevitably and irreversibly led to its failure, and ultimate closing on July 20, 2008.
>
> *               *               *               *
>
> 49.     Starting with the preliminary discussions regarding the purchase of their Petland franchise, plaintiffs and members of the Class were subjected to numerous material misrepresentations concerning, among other things, (i) the true start-up costs to open their Petland stores consistent with Petland requirements and protocols; (ii) the finances, profits and losses of

the immediately preceding franchisee of the same store; (iii) the reasons why the prior franchisee had failed to succeed in the same store location; and (iv) the functionality of the POS data system servicing their stores.

(*See* Am. Comp. at ¶¶39, 49.)

The insufficiency of the foregoing allegations of fraud is illustrated by focusing upon the subject matter of the alleged misrepresentations.  The first area of alleged misrepresentation (in Count I, as well as the General Allegations set forth in the Amended Complaint) is the start-up costs to open the plaintiffs' franchise store consistent with Petland's requirements and protocols.  The Amended Complaint does not specify when Petland provided plaintiffs with information on the expected start-up costs, whether the representations on the expected start-up costs were oral or written, where the representations were made, and most importantly what precisely was allegedly represented about the start-up costs.  Indeed, from plaintiffs' Amended Complaint it is impossible to tell whether this fraud allegation relates to the estimates of start-up costs disclosed to plaintiffs and all potential franchisees in Petland's then current Uniform Franchise Offering Circular or to some other statement or document.

Petland believes that the plaintiffs fail to provide the required specificity, because to attempt to do so would be fatal to plaintiffs' fraud claims.  If plaintiffs were to assert an alleged representation relating to the start up costs that is different from estimated start costs contained in the then current Uniform Franchise Offering Circular, then plaintiffs' claims will run afoul of the Statute of Frauds, as well as the Franchise Agreement which provides:

> Franchisee acknowledges that it has read this Agreement and Franchisor's Uniform Franchise Offering Circular and all exhibits thereto upon which it has exclusively relied, and that it has no knowledge of any representations by Franchisor or it officers, directors, shareholders, employees or agents

that are contrary to the statements made in Franchisor's Uniform Franchise Offering Circular or to the terms herein.

(*See* Am. Comp., Ex. 1 at p. 2.) Ohio law prohibits a fraudulent inducement claim to be premised on representations directly contrary to those in a written agreement. See *Galmish v. Cicchini*, 90 Ohio St.3d 22, 29 (2000)(a party may not circumvent the parol evidence rule by claiming that the fraudulent inducement was a prior or contemporaneous oral agreement, the terms of which contradict the written agreement). Stated otherwise, plaintiffs cannot premise a fraud claim on allegations that they relied on statements which they expressly denied relying upon in their Franchise Agreement.

If the allegation of fraud, on the other hand, is premised on the estimate provided in the franchise offering circular, then the claim would fail on its face as the franchise offering circular repeatedly states that the figures were estimates and actual costs may differ. Either way, if plaintiffs would have provided the required level of specificity, Petland could have immediately addressed the insufficiency of plaintiffs' allegations relating to the start up costs.

Similarly, plaintiffs' allegations relating to false information with respect to the finances, profits and losses of the preceding franchisee fall short of the requirements of Rule 9(b). Again, the basic "who, when and where" details are missing, as is the precise description as to "what" was allegedly represented by Petland about the prior franchisees' finances. Are plaintiffs claiming that they looked at the financial statements of the prior franchisee, but such statements were not accurate? Or, are plaintiffs claiming that *oral* representations were made regarding the prior franchisee's financial performance, and if so, when, by whom and what was said? Indeed, the Franchise Agreement itself includes an express acknowledgement that the franchisee "HAS CONDUCTED AN

106026.000005/#4828-7618-9187 v6

13

INDEPENDENT INVESTIGATION AND FINANCIAL ASSESSMENT OF THE BUSINESS CONTEMPLATED BY [THE FRANCHISE] AGREEMENT . . . ." (*See* Am. Comp., Ex. 1, at p. 37.)  Applicable law and plaintiffs' own acknowledgements highlight the importance of knowing what it is that the plaintiffs claim was misrepresented, beyond their conclusory labels of misrepresentation.  Moreover, this same lack of detail exists with respect to the alleged misrepresentations concerning the reasons the prior franchise failed, and the functionality of the POS data system.

As the Sixth Circuit Court of Appeals noted in *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008), Rule 9(b)'s particularity requirement protects a defendant from unwarranted damage to its reputation caused by "spurious charges of immoral and fraudulent behavior."  Petland suffers real damage when plaintiffs make unsupported allegations in a complaint that Petland has a scheme to defraud prospective franchisees into entering into a franchise relationship that Petland knows is predestined to fail.  Pursuant to Rule 9(b), Petland is entitled to be immediately notified of the particularities of the plaintiffs' fraud contentions, so that, if possible, it can quickly resolve any frivolous dispute by attacking the narrow basis of the fraud allegation.  Plaintiffs' Amended Complaint deprives Petland of this opportunity by only pleading the general subject matter of the fraud allegation.

2)      **Plaintiffs' Negligent Misrepresentation Claim Fails To Meet The Requirements Of Fed. R. Civ. P. 9(b)**

Claims for negligent misrepresentation, like claims for fraudulent misrepresentation, are subject to the particularity requirements of Fed. R. Civ. P. 9(b). *See In re Commer. Money Ctr., Inc., Equip. Lease Litig.*, 2006 U.S. Dist. LEXIS 72159 (N.D. Ohio, Oct. 3, 2006); *Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101,

1141 (C.D. Cal. 2003).  In this case, plaintiffs' negligent misrepresentation claim (Count V) is apparently premised on the general allegations in Paragraph 39 (set forth above) and in  Paragraph 70 of the Amended Complaint, which reads as follows:

> Petland and its servants, agents, and/or employees, in the course of [sic] its business, supplied false and/or misleading information to plaintiffs and members of the Class in the guidance of opening and running their Petland franchises.

Beyond the foregoing conclusory allegation, no additional information is provided anywhere in the Amended Complaint as to the nature of the alleged negligent misrepresentations.  Such allegations do not comply with the requirements of Rule 9(b), and Petland respectfully submits must be dismissed.

### 3) Plaintiffs' Civil RICO Claim Fails To Meet The Requirements Of Fed. R.Civ. P. 9(b)

If fraud is the basis for a civil RICO matter, the pleading is governed by Rule 9(b).  *See Wright v. Dunn*, 2009 U.S. App. LEXIS 4239 (6th Cir., March 3, 2009); *Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992) (RICO action dismissed for failure to plead with particularity required by Fed. R. Civ. P. 9(b)); *Bender v. Southland Corp.,* 749 F.2d 1205, 1215 (6th Cir. 1984).  "Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact. . . ." *Blount Fin. Servs., Inc., v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987).  As to the level of specificity required, "a RICO plaintiff 'must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud.'" *Goren v. New*

*Vision Int'l*, 156 F.3d 721, 726 (7th Cir. 1998)  (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)).

In amending their complaint, plaintiffs added a civil RICO claim predicated on mail and wire fraud.  (Amended Complaint, Count VI, ¶¶75 to 81.)  While the new claim incorporated all prior allegations, it did not add anything new with respect to the alleged fraudulent representation upon which it was based.  Rather, the only allegation in this claim relating to the underlying fraud was as follows:

> Petland used fraudulent pretenses to induce plaintiffs and Class members into purchasing a Petland franchise by knowingly and deliberately making false representations of fact, and/or omitting material true facts.

(Am. Comp. at ¶78.)  This is precisely the type of conclusory allegation that the Supreme Court holds in *Twombly* and *Ashcroft* requires dismissal.  Plaintiffs never identify with particularity the false statement or statements upon which their civil RICO claim is based as required by the Sixth Circuit case law.  Accordingly, and in addition to the other pleading deficiencies with respect to such claim that are addressed above, plaintiffs' RICO claim must also be dismissed for failure to comply with Rule 9(b).

## V.   PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiffs' Amended Complaint also asserts a claim for unjust enrichment (Count VII).  The unjust enrichment claim is premised on the allegation that defendants, "by virtue of the franchise, asset purchase, and approved vendor agreements," unjustly received tens of millions of dollars from various Petland franchisees.  Such a claim is directly contrary to Ohio law.

Claims made under the equitable doctrines of quantum meruit or unjust enrichment are not based upon contract, but upon quasi-contract. *Campana v. Ford*

*Motor Co.*, 2007 Ohio 4040, 2007 Ohio App. LEXIS 3678 (Cuyahoga App., Aug. 9, 2007).  Liability in quasi-contract arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain.  *Id.*  The doctrines are inapplicable if an express agreement exists between the parties.  *Cozmyk Enters. v. Hoy*, 1997 Ohio App. LEXIS 2864 (Franklin App., June 30, 1997) (unjust enrichment operates in the absence of an express contract); *Gehrke v. Smith*, 1993 Ohio App. LEXIS 3410 (Madison App., July 6, 1993) ("[w]here there is an express contract, between the parties, none can be implied"); *Joseph Oldsmobile/Nissan v. Tom Harrigan Oldsmobile*, 1995 Ohio App. LEXIS 1923 (Montgomery App., May 10, 1995) ("[t]he remedy of unjust enrichment is not available where there is an express contract covering the same subject").

In their Amended Complaint, Plaintiffs not only specifically acknowledge the existence of a written contractual relationship with Petland, but base their unjust enrichment claim on said contracts.  Such a claim simply does not exist under Ohio law.

## VI.    CONCLUSION

For all of the foregoing reasons, defendant Petland, Inc. respectfully requests that the Court dismiss the claims set forth in Counts I (Fraud), II (Fraudulent Inducement), V (Negligent Misrepresentation), VI (RICO), and VII (Unjust Enrichment) of the Amended Complaint.

Respectfully submitted,

/s/ Robert G. Cohen_____
Robert G. Cohen        (0041707)
rcohen@keglerbrown.com
Robert G. Schuler       (0039258)
rschuler@keglerbrown.com
R. Kevin Kerns          (0021781)

106026.000005/#4828-7618-9187 v6                    17

kkerns@keglerbrown.com
Kegler, Brown, Hill & Ritter, L.P.A.
65 E. State Street, Suite 1800
Columbus, OH  43215
(614) 462-5492  Direct dial telephone
(614) 464-2634 Facsimile

Counsel for Defendant Petland, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and accurate copies of the foregoing were served on all parties, this 25th day of June, 2009, by the Court's Electronic Filing System.

/s/ Robert G. Cohen_____
Robert G. Cohen

106026.000005/#4828-7618-9187 v6                    18