# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Veronica R. Jones,

  et al.,

    Plaintiffs,

v.

Petland, Inc.,

  et al.,

    Defendants.

Case No. 2:08-cv-1128
Judge Michael H. Watson

Petland, Inc.,

    Plaintiff,

v.

Hydeaway Pets, LLC,

  et al.,

    Defendants.

Case No. 2:08-cv-1193
Judge Michael H. Watson

## OPINION AND ORDER

This consolidated putative class action concerns failed pet store franchises. Plaintiffs assert a claim of aiding and abetting fraud against defendant Loveland Pet Products, Inc. ("Loveland"). Loveland moves to dismiss. (Doc. 99 in Case No. 2:08-cv-1129; Doc. 50 in Case No. 2:08-cv-1193). For the following reasons, the Court grants Loveland's motion to dismiss.

### I. Facts

The Court derives the following facts from plaintiffs' amended complaint. (Doc. 88).

## A. The parties

Plaintiffs in this action are Dr. Veronica R. Jones and Robert C. Hyde. Jones and Hyde had a partnership organized under the laws of the State of Tennessee, plaintiff Hydeaway Pets LLC ("Hydeaway"), for the purpose of owning and operating a Petland franchise. The franchise was located in Murfreesboro, Tennessee.

Defendant Petland is an Ohio corporation with its principal place of business in Chillicothe, Ohio. Petland sells pets and pet supplies. It also franchises its pet supply business to franchisees.

Defendants Hunte Kennel Systems & Animal Care and Hunte Delivery System, Inc. (collectively, "Hunte") have their principal place of business in the State of Missouri. Hunte supplies puppies to pet stores, and is Petland's preferred supplier. Hunte supplied puppies to plaintiffs.

Loveland has its principal place of business in Mason, Ohio. Loveland is one of the preferred suppliers of pet store merchandise to Petland. Loveland supplied merchandise to plaintiffs.

Defendant Dunn & Dunn Data Systems, Inc. ("Dunn & Dunn") has its principal place of business in Vero Beach, Florida. Dunn & Dunn developed the point of sale software system ("POS system"). Petland requires its franchisees to purchase and use the POS system.

Defendant Coastal has its principal place of business in Alliance, Ohio. Coastal is one of the preferred suppliers of pet store merchandise to Petland. Coastal allegedly supplied merchandise to class members, but not to plaintiffs.

Defendant Central Garden has its principal place of business in Walnut Creek, California. Central Garden is one of the preferred suppliers of pet store merchandise to Petland. Central Garden supplied merchandise to plaintiffs.

## B. Background

In early 2005, Jones and Hyde began to explore the possibility of owning and running a pet store. After performing some research on the Internet, Jones and Hyde believed that a Petland franchise would be a good investment, and accordingly they contacted Petland. Jones and Hyde were interested in opening a new store in Franklin, Tennessee, but Petland offered them an existing store in Murfreesboro, Tennessee which had previously failed. Petland allegedly told Jones and Hyde that with minimal remodeling, capable owners could make $150,000 a month at the store.

Jones and Hyde entered into a Franchise Agreement with Petland on September 22, 2005. After Jones and Hyde formed Hydeaway, Hydeaway suceeded them as the franchisee in a Franchise Agreement dated January 7, 2006. Plaintiffs allege that Petland misled them into entering the Franchise Agreements by providing them false and misleading information concerning the Murfreesboro store.

Plaintiffs opened their store on February 26, 2006. Animals delivered by Hunte were sick, causing plaintiffs to incur veterinarian bills of approximately $40,000. Moreover, the sick animals had to be placed in isolation and could not be sold for a period of ten or more days. Plaintiffs assert that the animals purchased from Hunte and the merchandise purchased from Loveland were overpriced. Plaintiffs also allege that Petland received kickbacks from its approved vendors. In addition, plaintiffs maintain that the Dunn & Dunn POS system never worked properly. Plaintiffs aver that as a result fo these problems, they were forced to close the Murfreesboro store on July 20, 2008.

## C. Plaintiffs' claim

Plaintiffs assert a claim of aiding an abetting fraud (Count VIII) against

Loveland.[1] In Count VIII, plaintiffs assert: "Upon information and belief, defendants Hunte, Dunn & Dunn, Central Garden, Hagen, Coastal and Loveland aided and abetted Petland's fraud by entering into arrangements with Petland to serve as Petland's 'approved vendors' in exchange for paying kickbacks to Petland in the form of, among other things, 'marketing dollars.' Defendants . . . in turn, knowingly sell overpriced merchandise to Petland's captive franchisees as to which franchisees cannot make a sufficient profit margin to survive." *Id.* ¶ 94, 95.

## II. Motion to Dismiss

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further

---

[1] Plaintiffs dismissed their unjust enrichment claim (Count VII) against Loveland by stipulation on September 21, 2009. (Doc. 97 in Case No. 2:08-cv-1193).

factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557-58 (internal citations omitted).

### III. Discussion

Loveland seeks dismissal of Count VIII, plaintiffs' claim for aiding and abetting Petland's alleged fraud. It argues that plaintiffs have failed to plead the claim with particularity as required under Fed. R. Civ. P. 9(b). In Count VIII, plaintiffs allege that Loveland "aided and abetted Petland's fraud by entering into arrangements with Petland to serve as Petland's 'approved vendors' in exchange for paying kickbacks to Petland in the form of, among other things, 'marketing dollars.'" Amended Compl. (Doc. 88) ¶ 94.

> It is unclear whether Ohio recognizes a common law cause of action for aiding and abetting tortious conduct. *Compare Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 533 (6th Cir. 2000) ("[W]e conclude that the Supreme Court of Ohio would recognize aiding and abetting liability if squarely faced with the issue ....") *with Federated Mgmt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 738 N.E.2d 842, 853 (Ohio 10 Dist. App. 2000) ("Ohio does not recognize a claim for aiding and abetting common-law fraud."); *see also Pavlovich v. Nat'l City Bank*, 342 F.Supp.2d 718, 734-36 (N.D. Ohio 2004) (discussing this conflict in more detail).

*Pavlovich v. National City Bank*, 435 F.3d 560, 570 (6th Cir. 2006). The lack of clarity continues. *See In re National Century Financial Enterprises, Inc. Investment Litigation*, 617 F. Supp. 2d 700, 719 n.4 (S.D. Ohio 2009). Given this uncertainty, the Court declines to dismiss Count VIII on the ground that Ohio does not recognize the tort of aiding and abetting fraud.[2]

To establish a claim of aiding and abetting fraud, a plaintiff must demonstrate:

---

[2] The parties do not raise any choice of law issues, and apparently assume the applicability of Ohio law.

(1) the existence of fraud; (2) the defendant's knowledge of that fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006); *Filler v. Hanvit Bank*, 156 Fed. Appx. 413, 417 (2d Cir. 2005); *Directv Latin Am., LLC v. Park 610, LCC*, — F. Supp. 2d —, 2010 WL 305201, at *24 (S.D.N.Y. Jan. 26, 2010). "[T]he particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims." *Filler*, 156 Fed. Appx. at 417; *Lerner*, 459 F.3d at 292-93; *DirecTV*, — F. Supp. 2d at —, 2010 WL 305201, at *24.

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) recognizes that allegations of fraud "raise a high risk of abusive litigation." *See Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 569 n.14 (2007). The particularity requirement is designed to protect defendants from fishing expeditions. *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008).

> Rule 9(b) is also meant to protect defendants from "'spurious charges of immoral and fraudulent behavior.'" *Bledsoe II*, 501 F.3d at 510 (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)); *accord United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007) ("'Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)).'" (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted)). Lastly, Rule 9(b) is intended to provide defendants with "notice of the specific conduct with which they were charged," so that the defendants can prepare responsive pleadings. *Bledsoe II*, 501 F.3d at 510.

*Id.* To satisfy Rule 9(b), a plaintiff must allege, at a minimum, the time, place, and content of the alleged misrepresentation; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud. *Id.* at 444; *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 518 (6th Cir. 2009).

As the Court held in its decision addressing Petland's motion to dismiss, plaintiffs

have failed to plead fraud on the part of Petland with sufficient particularity to satisfy Rule 9(b). As a result, plaintiffs are also unable to establish the first essential element of their claim for aiding and abetting fraud, namely, the existence of fraud by Petland. In addition, plaintiffs have failed to allege facts from which it could be inferred that Loveland had knowledge of any alleged fraud against plaintiffs on the part of Petland. Further, there is a complete disconnect between plaintiffs' allegations of fraud by Petland, which allegedly induced plaintiffs to enter the Franchise Agreement, and plaintiffs' allegations that Loveland later overcharged plaintiffs for merchandise and paid rebates to Petland. In this sense, plaintiffs have failed to plead that Loveland substantially assisted Petland's alleged fraud. The Court therefore finds that plaintiffs cannot satisfy any of the essential elements of a claim for aiding and abetting fraud. Accordingly, Loveland entitled to dismissal of plaintiffs' aiding and abetting fraud claim.

## IV. Disposition

For the above reasons, the Court **GRANTS** Loveland's motion to dismiss. (Doc. 99 in Case No. 2:08-cv-1129; Doc. 50 in Case No. 2:08-cv-1193). The Court **DISMISSES** Count VIII against Loveland with prejudice.

The Clerk shall remove Doc. 99 in Case No. 2:08-cv-1129 and Doc. 50 in Case No. 2:08-cv-1193 from the Court's Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*

**MICHAEL H. WATSON, JUDGE**
**United States District Court**